**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHARON SNYDER, Individually and as | ) | CASE NO.: |
| Administratrix of the Estate of Desiree | ) | |
| Snyder, deceased | ) | JUDGE: |
| 3601 Memphis Avenue | ) | |
| Cleveland, Ohio 44019 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| TERRY SNYDER | ) | **COMPLAINT FOR BREACH OF** |
| 3601 Memphis Avenue | ) | **CONTRACT, BAD FAITH AND** |
| Cleveland, Ohio 44019 | ) | **BREACH OF FIDUCIARY DUTY,** |
| | ) | |
| And | ) | (Jury Demand Endorsed Hereon) |
| | ) | |
| SECRET'S GENTLEMAN'S CLUB | ) | |
| 12820 Brookpark Road | ) | |
| Cleveland, Ohio 44130 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| GLMR, INC. | ) | |
| d/b/a Secrets | ) | |
| 12820 Brookpark Road | ) | |
| Cleveland, Ohio 44130 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MESA UNDERWRITERS SPECIALTY | ) | |
| INSURANCE COMPANY | ) | |
| 40 Wantage Avenue | ) | |
| Branchville, New Jersey 07890 | ) | |
| | ) | |
| Defendant. | ) | |

Now come Plaintiffs, Sharon and Terry Snyder ("the Snyders") and Secret's Gentleman's

Club and GLMR, Inc. (collectively "Secrets"), by and through their counsel, pursuant to Civil

1

Rule 3 of the Federal Rules of Civil Procedure, 28 U.S.C. §1391 and this Honorable Court's July 21, 2017 Memorandum Opinion and Judgment,[1] and for their combined Complaint against Defendant Mesa Underwriters Specialty Insurance Company ("Mesa") for Breach of Contract, Bad Faith and Breach of Fiduciary Duty, respectfully state as follows:

## JURISDICTION AND VENUE

1.    At all relevant times, the Snyders and their deceased daughter Desiree, were residents of Cuyahoga County, Ohio.

2.    At all relevant times, Secrets operated a business and conducted business activities in Cuyahoga County, Ohio and had its principal place of business there.

3.    At all relevant times, Defendant Mesa conducted a substantial part of the events or omissions giving rise to the claims asserted herein in Cuyahoga County, Ohio, including but not limited to by: negotiating policy terms with Secrets in Cuyahoga County, Ohio, issuing policy no. MP0034001000890 to Secrets in Cuyahoga County, investigating the underlying claim involving Desiree Snyder's injuries and death in Cuyahoga County, Ohio, and conducting other claims handling activities and functions in Cuyahoga County, Ohio, such that venue is appropriate in this matter pursuant to 28 U.S.C. §1391(a)(1), (a)(2) & (b)(2).

4.    On August 15, 2016, Mesa filed a Complaint for Declaratory Judgment against Secrets and the Snyders in this Honorable Court, styled *Mesa Underwriters Specialty Insurance Company v. Secret's Gentleman's Club, et al*, N.D. Ohio Case No. 1:16-CV-2035, and conceded therein that venue is appropriate in the Honorable Court under 28 U.S.C. §1391(a)(1) & (a)(2).[2]

---

[1] See 7/21/17 Memorandum Opinion entered by this Honorable Court in *Mesa Underwriters Specialty Ins. Co. v. Secret's Gentleman's Club*, N.D. Ohio Case No 1:16-CV-2035, attached as Exhibit A, at PageID #1637 ("In an effort to conserve the resources of all Parties, and in light of this Court's determination that Mesa had a duty to defend and indemnify Secrets/GLMR in the State Court Action, all remaining claims are hereby dismissed without prejudice and may be refiled in proper form on or before October 1, 2017 if warranted.").
[2] See Mesa's Complaint for Declaratory Judgment in Case No. 1:16-CV-2035, Doc. #1, PageID #3.

5.     The claims at issue in this current lawsuit were originally filed by Secrets and the Snyders as Counterclaims to Mesa's Complaint for Declaratory Judgment in N.D. Ohio Case No. 1:16-CV-2035.[3]

6.     On July 21, 2017, this Honorable Court issued its Memorandum Order and Judgment deciding the insurance coverage issues and held that Mesa had a duty to defend Secrets on the common-law negligence claims asserted by the Snyders in the underlying State Court Action, *Sharon Snyder, et al. v. Julio Vargas, et al.,* Cuyahoga County Court of Common Pleas No. CV-15-839575 ("State Court Action"), and that Mesa is required to indemnify Secrets on those claims, which have already been adjudicated to final judgment in the State Court in the amount $8,038.305.66.[4] In addition, this Honorable Court held as follows:

> In an effort to conserve the resources of all Parties, and in light of this Court's determination that Mesa had a duty to defend and indemnify Secrets/GLMR in the State Court Action, all remaining claims are hereby DISMISSED WITHOUT PREJUDICE and may be refiled in proper form on or before October 1, 2017 if warranted.[5]

7.     The refiled claims asserted in this current Complaint, originally filed as Counterclaims to Defendant Mesa's Complaint for Declaratory Judgment in N.D. Ohio Case No. 1:16-CV-2035, exceed $75,000.00, such that this Honorable Court has jurisdiction over this matter pursuant to Art. III, §2 U.S. Const., and 28 U.S.C. §1332(a)(1).

8.     The claims at issue in this lawsuit have been timely refiled before the October 1, 2017 deadline established by this Honorable Court in its July 21, 2017 Memorandum Order and Judgment.

---

[3] See *Mesa Underwriters Specialty Ins. Co. v. Secret's Gentleman's Club*, N.D. Ohio Case No 1:16-CV-2035, at Doc. #17 (Snyder Answer and Counterclaims) and Doc. #18 (Secrets' Answer and Counterclaims).
[4] See 7/21/17 Memorandum Opinion entered by this Honorable Court in N.D. Ohio Case No 1:16-CV-2035, attached hereto as Exhibit A, at PageID #1629-1630, 1633-1634, 1636.

## GENERAL ALLEGATIONS

9.      On April 5, 2014, 22-year-old Desiree Snyder died after being hit by a wrong way driver on I-480, Julio Vargas ("Vargas"), just minutes after Vargas was ejected from the adult entertainment club known as Secrets Gentleman's Club that was at all relevant times owned and run by GLMR, Inc. (collectively "Secrets").

10.     At all relevant times, including on April 5, 2014, Secrets was insured under Mesa's Commercial General Liability policy number MP0034001000890 and its Commercial Property policy number MP0134001000018, both of which were issued by Mesa to Secrets in Cuyahoga County, Ohio through its Ohio agent, Stoermer Companies ("Stoermer"). (True and accurate copies of these policies are attached as Exhibits D and E).

11.     At all relevant times, Secrets paid all premiums due for the defense and indemnity afforded and owed under Mesa's Commercial General Liability policy number MP0034001000890 and its Commercial Property policy number MP0134001000018.

12.     Both Mesa's Commercial General Liability policy no. MP0034001000890 and its Commercial Property policy no. MP0134001000018 are renewal policies of earlier insurance policies Mesa issued to Secrets.

13.     At all relevant times, Mesa owed Secrets a duty to defend and indemnify on the Snyders' common-law negligence claims unrelated to the sale or service of alcohol.

14.     As this Honorable Court has already held in N.D. Ohio Case No. 1:16-CV-2035, Mesa owed Secrets a duty to defend and indemnify them under policy no. MP0034001000890 on the Snyders' common-law negligence claims unrelated to the sale or service of alcohol which

---

[5] *Id*. at PageID #1637.

have already been adjudicated to final judgment in the State Court. (Memorandum Opinion and Judgment, Exhibit A).

15.     Since Mesa breached these duties owed to Secrets by repeatedly denying them a defense and indemnity under policy no. MP0034001000890, Plaintiffs' breach of contract claim has been established as a matter of law, and the sole issue left for adjudication in this Honorable Court is the amount of damages to be awarded on this claim.

## FACTS RELATING TO MESA'S BAD FAITH<br>AND BREACH OF FIDUCIARY DUTY

16.     On January 28, 2015, the Snyders filed their State Court Action against Secrets and others for the survival and wrongful death damages sustained by Desiree Snyder and her Estate and wrongful death beneficiaries. (A true and accurate copy of the Snyders' State Court Action is attached as Exhibit C).

17.     As part of their State Court Action, the Snyders also sued Gigi's Lounge and Geza Enterprises, Inc. ("Gigi's Lounge"), where Julio Vargas had been drinking excessively on April 5, 2014 before arriving at Secrets.

18.     In addition to insuring Secrets, Mesa separately insured Gigi's Lounge.

19.     In their State Court Action, the Snyders asserted both statutory claims against Secrets and Gigi's Lounge, as well as separate, distinct and independent common-law negligence against each of them unrelated to the sale or service of alcohol for proximately causing Desiree Snyder's injuries and wrongful death.

20.     Count Five of the Snyders' State Court Action, styled "Negligence against Defendants, Gigi Lounge and Secrets, only," included all necessary elements of an ordinary

common-law negligence cause of action. Counts One (Wrongful Death) and Seven (Survivorship Claims) likewise included negligence allegations unrelated to the sale or service of alcohol.

21.      This Honorable Court has already conclusively held that Mesa had a duty to defend and indemnify Secrets on these claims (7/21/17 Memorandum Opinion and Judgment, Exhibit A), which have already been adjudicated to final judgement in and by the State Court (State Court Findings of Fact and Conclusions of Law, Exhibit B).

22.      While Mesa chose to defend and indemnify Gigi's Lounge on the Snyders' common-law negligence claims in the State Court Action, it denied a defense and indemnity to Secrets on these same claims.

23.      Secrets timely put Mesa on notice of the Snyders' State Court Action and demanded a defense and indemnity under Mesa's policy number MP0034001000890.

24.      Mesa first received notice and a copy of the Snyders' State Court Action against Secrets on February 24, 2015.

25.      The very next day, February 25, 2015, and without first conducting a reasonable investigation into the multiple claims asserted against Secrets, Mesa confirmed to Secrets in writing that it received the notice of the lawsuit the day before and that it was denying Secrets a defense and indemnity on these claims. (Exhibit F).

26.      A true and accurate copy of the February 25, 2015 letter Mesa's Senior Claims Examiner Lauren Bracy sent to Secrets Gentleman's Club is attached to this Complaint as Exhibit F.

27.      Despite the Snyders' separate wrongful death and survival common-law negligence claims (plural) unrelated to the sale or service of alcohol, and the fact that the Snyders State Court Action involved nine distinct claims, Mesa misrepresented to Secrets in its

February 25, 2015 denial letter that "[t]he <u>claim</u> being made against Secrets is a liquor liability <u>claim</u>" (singular) and that "[t]he Mesa policy excludes coverage for Liquor Liability." (Id.). On this purported basis, Mesa denied a defense and indemnity and told Secrets they would need to hire their own counsel to protect their interests. (Id.)

28.     Mesa made these misrepresentations despite knowing they were false and that the Snyders' State Court Action included multiple common-law negligence claims or allegations that were independent from and unrelated to the sale or service of alcohol and that were within its defense and coverage obligations.

29.     Mesa was required to defend Secrets on these claims, including under the Sixth Circuit's holding in *Mid-Continent Inc. Co. v. Coder*, 563 Fed. Appx. 422, 2014 U.S. App. LEXIS 70460 (6th Cir., April 21, 2014) and the Eighth District Court of Appeals' decision in *Kovesdy v. Utica Fire Ins. Co.*, 119 Ohio App.3d 547, 550-551; 695 N.E.2d 1165 (8th Dist. 1997). See also *Prince v. Buckeye Union Ins. Co.*, 5th Dist. Richland No. 92-CA-6, 1992 WL 362578 (Dec. 2, 1992); *Auto-Owners Ins. Co. v. JC KC, Inc.*, 9th Dist. Summit No. 18937, 1998 WL 766695 (Nov. 4, 1998).

30.     Due to Mesa's wrongful denial of a defense and indemnity, Secrets had to retain legal counsel to protect their interests at their own significant expense of $100,000.00 or more in out-of-pocket legal fees, costs and/or expenses associated with the State Court Action, additional legal fees, costs and expenses associated with N.D. Ohio Case No 1:16-CV-2035, and even more legal fees, costs and expenses relating to this current lawsuit.

31.     Roetzel & Andress Attorney Ronald Lee ("Attorney Lee") was retained to represent Secrets in the State Court Action and repeatedly demanded that Mesa defend and

indemnify Secrets based on the Snyder's common-law negligence claims and allegations unrelated to the sale or service of alcohol.

32.     By way of a letter dated March 25, 2015 (Exhibit G), Attorney Lee demanded that Mesa assume Secrets' defense and directed Mesa's attention to specific negligence counts and allegations in the Snyders' State Court Action against Secrets that were unrelated to the sale or service of alcohol.

33.     A true and accurate copy of the March 25, 2015 letter from attorney Ronald B. Lee to Mesa's Senior Claims Examiner Lauren Bracy is attached as Exhibit G.

34.     In response to Attorney Lee's March 25, 2015 letter, Mesa continued to deny a defense and indemnity to Secrets.

35.     Mesa's Cuyahoga County, Ohio coverage counsel sent letters to Attorney Lee on April 3, 2015 and June 25, 2015, true and accurate copies of which are attached at Exhibits H & I.

36.     At all relevant times, Mesa and its coverage counsel knew that, under Ohio law, an insurer's duty to defend is triggered based on the allegations contained in a complaint.

37.     At all relevant times, Mesa and its coverage counsel knew that Ohio law does not permit an insurer to ignore the allegations contained in a complaint and instead deny a defense based on its subjective belief as to the truth or veracity of the factual allegations contained in a complaint.

38.     Despite that knowledge, on June 25, 2015, Mesa confirmed in writing to Attorney Lee, as shown in Exhibit I, that it was continuing to deny a defense and coverage to Secrets since "We have no reason to ascribe any veracity to Plaintiffs' allegations against the Defendants."

39.     In that same June 25, 2015 letter, Mesa incredibly stated it was also denying coverage and a defense to Secrets on the purported basis that "Secrets Gentlemans Club" was not listed as a Named Insured in the Declarations to its policy.

40.     Mesa and its employees and/or agents knew the foregoing statements and this claimed basis for denial were untrue when made, particularly since the Declarations to Mesa's policy number MP0034001000890 signed by its President and Corporate Secretary show that Mesa issued this policy to "Secrets Gentlemans Club" and that "Secrets Gentlemans Club" is expressly identified as a Named Insured. (See Mesa Policy No. MP0034001000890, Exhibit D; See also Mesa's February 25, 2015 denial letter, Exhibit F, confirming that "Secrets Gentleman's Club" was the "Insured" under its policy, and this Court's 7/21/17 Memorandum Opinion, Exhibit A, at PageID #1612-1613 and fn.1 (confirming the same)).

41.     Mesa's manufactured and unsupportable position that Secrets was somehow not insured under its policy number MP0034001000890 was addressed in correspondence between Attorney Lee and Mesa's coverage counsel, true and accurate copies of which are attached to this Complaint as Exhibit J, K & L.

42.     Mesa abandoned its manufactured position that Secrets Gentleman's Club was somehow not an insured, and it did not raise this as a defense or argument at any point during the summary judgment proceedings in N.D. Ohio Case No. 1:16-CV-2035, which this Honorable Court has already adjudicated to final judgment in favor of Plaintiffs and against Defendant Mesa, as shown in Exhibit A attached to this Complaint.

43.     In Attorney Lee's July 21, 2015 letter to Mesa's coverage counsel (attached as Exhibit J), he also informed Mesa about the substantial litigation expenses Secrets was incurring due to its improper denial of the defense and coverage to its insureds.

44. Mesa replied on August 4, 2015 (attached as Exhibit K) and again chose to deny a defense and coverage to Secrets. Just as it had done in its earlier letter of June 25, 2015 (attached as Exhibit I), Mesa against advised Secrets that it might seek a judicial determination of its rights and obligations under policy number MP0034001000890 in a court of competent jurisdiction.

45. However, Mesa did nothing between its initial notice of the Snyders' State Court Action on February 24, 2015 and the scheduled trial date in May 2016 to seek a judicial determination of its rights or obligations under policy number MP0034001000890 in any court.

46. In addition, Mesa did nothing between its initial notice of the Snyders' State Court Action on February 24, 2015 and the evidentiary hearing and bench trial the State Trial Court ("State Court") held on August 3, 2016 to seek a judicial determination of its rights or obligations under policy number MP0034001000890 in any court.

47. A true and accurate copy of the August 25, 2015 letter Attorney Lee sent to Mesa's coverage counsel is attached as Exhibit L.

48. In this August 25, 2015 letter, Mesa was again urged to reconsider its "inappropriate, improper denial of coverage."

49. In this August 25, 2015 letter, Mesa was advised in part as follows:

As I am sure you are aware, MESA is under a duty to exercise good faith and fair dealing with its insured at all times. If there are any allegations which are potentially or arguably within the parameters of the coverage provisions, then, pursuant to Ohio law, an insurance carrier owes a duty to at least defend its insured in that lawsuit. Despite these duties of good faith and fair dealing owed, it appears that on behalf of MESA, you have made unfavorable assumptions and gone beyond the allegations of the Complaint, which control MESA's defense obligation. As pointed out in our correspondence of March 25, 2015, a review of the allegations as written in the Complaint evidences that Count I is not based on any allegations that anyone at Secrets gave Mr. Vargas intoxicating beverages.

Moreover, as recognized by the Sixth Circuit Court of Appeals, applying Ohio law, the liquor liability exclusion upon which MESA relies to deny coverage is limited in its application and does not in fact apply to this case even though it is a

partial Dram Shop case. In *Mid-Continent Ins. Co. v. Coder*, 2014 Fed. App. 0295N (6th Cir. April 21, 2014), the Court held that a liquor liability exclusion, identical to that contained in the MESA policy, did not bar coverage for a wrongful death action.

50.     Mesa chose to not respond to Attorney Lee's August 25, 2015 letter at all.

51.     A true and accurate copy of the January 14, 2016 letter Attorney Lee sent to Mesa's coverage counsel is attached as Exhibit M. In that letter, Mesa was provided with a copy of the expert report of the Snyders' security expert, Gregory Baeppler, which contained expert opinions in support of the Snyders' common-law negligence claims unrelated to the sale or service of alcohol. Mesa was given yet another chance to assume Secrets' defense and was advised as follows:

> As this case has gone on, it has become apparent that this is more than a service of alcohol case. With the expert disclosures by Plaintiff, we have received the attached report of Gregory Baeppler, a security consultant. The report goes into detail with regard to security issues at Secrets. Among the opinions of Mr. Baeppler concerns security issues that would fall outside of the exclusion which you have cited.
>
> In any event, we would once again ask for the defense and indemnity of GLMR in this case.

52.     Yet again, Mesa chose not to respond to Attorney Lee's letter at all and instead continued to deny the defense and coverage Secrets had paid for and were entitled to.

53.     At the same time, Mesa, through the attorneys it paid to defend co-defendant Gigi's Lounge, filed a Motion for Summary Judgment in the State Court Action asking the State Court to rule that the Snyders' common-law negligence claims lacked merit and should be dismissed.

54.     In that dispositive motion, the attorneys Mesa paid to defend Gigi's Lounge conceded that Ohio Courts have permitted common-law negligence claims "to proceed in fact-

specific cases where there was some act on the part of the establishment that was independent of the furnishing of alcohol."[6]

55.     The State Court denied the dispositive motion, and Mesa was aware that the Snyders' common-law negligence claims separate, distinct, independent from and unrelated to the sale or service of alcohol would be proceeding to trial.

56.     Despite that knowledge, Mesa continued to deny Secrets the defense and coverage on these covered claims that they had paid for and were entitled to.

57.     By this time, Secrets had already incurred approximately $100,000.00 in legal fees and expenses funding their own defense to the Snyders' State Court Action due to Mesa repeatedly and improperly denying them the defense and indemnity they had paid for and were contractually entitled to.

58.     Due to the mounting costs of the impending trial, as well as the extensive evidentiary record supporting the Snyders' common-law negligence claims, Secrets entered into a Stipulation for Consent Judgment with the Snyders on May 18, 2016, and then an Amended Stipulation for Consent Judgment with them on May 31, 2016 (attached as Exhibit N), in which Secrets stipulated as follows:

> Now come the Plaintiffs and Defendant, GLMR, Inc., by and through their counsel or record, and hereby stipulate that the Trial Court can consider a consent judgment being entered against Defendant GLMR, Inc. on Counts One (1), Five (5), Six (6) and Seven (7) of Plaintiffs' Complaint for an amount to be determined by the Trial Court at a hearing on Plaintiffs' damages, including but not limited to, survivorship damages (fear of impending death, medical expenses, funeral bill, loss of earnings over Decedent's lifetime), and wrongful death damages (loss of companionship, grief, emotional distress, loss of society, loss of support, loss of inheritance) and loss of consortium,

> ***

---

[6] See Doc. #36-2 filed in N.D. Ohio Case No. 1:16-CV-2035 at Doc. #36-2, PageID #1164 and Exhibit J.

Defendant Secrets specifically denies liability on any causes of action brought by Plaintiffs, but agree to allow the Trial Court to evaluate the liability evidence and damages prior to entering a consent judgment, if any.

59.     Mesa, which defended co-defendant Gigi's Lounge in the Snyders' State Court Action, was aware of these stipulations to permit the State Court to conduct an evidentiary hearing and bench trial to fully adjudicate Secrets' liability on the Snyders' common-law negligence claims after the trial against co-defendant Gigi's Lounge concluded.

60.     Trial against Gigi's Lounge commenced on or about May 25, 2016. Nearly a week into trial, and with full knowledge of the extensive evidentiary record already presented at trial, Mesa's corporate claims representative who was present throughout the trial agreed to settle all of the Snyders' claims asserted against Gigi's Lounge, including their common-law negligence claims independent from and unrelated to the sale or service of alcohol.

61.     On or about May 31, 2016, Secrets entered into an Amended Stipulation for Consent Judgment with the Snyders, allowing Secrets to continue to deny liability and allowing the State Court to adjudicate Secrets' liability for the Snyders' common-law negligence claims. The Snyders withdrew their Dram Shop claims against Secrets and there were no statutory claims before the State Court for adjudication.

62.     The State Court scheduled an evidentiary hearing and bench trial to adjudicate the liability and damages, if any, of Secrets on the Snyders' common-law negligence claims for August 3, 2016.

63.     Mesa had notice of the August 3, 2016 evidentiary hearing and bench trial but chose not to participate on behalf of Secrets.

64. Counsel for the Snyders and the attorney Secrets had to retain at their own substantial expense attended the August 3, 2016 evidentiary hearing and bench trial on the Snyders' common-law negligence claims unrelated to the sale or service of alcohol.

65. Counsel for Gigi's Lounge, paid for by Mesa, was present throughout the evidentiary hearing and bench trial even though by that time the Snyders and Gigi's Lounge had settled their claims.

66. Mesa chose not to intervene on behalf of Secrets at any time during the State Court Action, chose not to be heard at the August 3, 2016 evidentiary hearing and bench trial and never sought a timely determination from the State Court or any other court regarding its duty to defend or indemnify Secrets on these claims

67. Instead, on August 15, 2016, nearly two weeks after the State Court already held its evidentiary hearing and bench trial and when its liability and damages ruling was imminent, Mesa filed a Complaint for Declaratory Judgment in this Honorable Court as Case No 1:16-cv-2035 seeking solely a declaration as to its duty to indemnify.

**The State Court's Final Judgment against Secrets
on the Snyders' Common-Law Negligence Claims**

68. On September 28, 2016, the State Court issued its Findings of Fact and Conclusions of Law in the Snyders' State Court Action on their common-law negligence claims against Secrets for the injuries and wrongful death of Desiree Snyder.

69. A true and accurate copy of the State Court's final judgment and Findings of Fact and Conclusions of Law is attached as Exhibit B.

70. In its Findings of Fact and Conclusions of Law, the State Court repeatedly held that its adjudication of Secrets' liability was not premised in any respect on the sale or furnishing

of alcoholic beverages to Julio Vargas or on a statutory violation of Ohio's Dram Shop statute, R.C. §4399.18. Instead, the State Court repeatedly made clear throughout its Findings of Fact and Conclusions of Law that its sole focus was on the alleged common-law negligence of Secrets based on the unique and case-specific facts and attendant circumstances contained in the evidentiary record before it.

71.     In its Findings of Fact and Conclusions of Law, the State Court expressly entered a final judgment in favor of the Snyders on their common-law negligence claims against Secrets in the amount of $8,038,305.66, marked its Judgment Entry as "FINAL," dismissed any remaining claims with prejudice, and assessed court costs against Secrets.

72.     The State Court's final judgment against Secrets in the amount of $8,038,305.66, plus accrued interest, constitutes a fully adjudicated excess judgment against Secrets on common-law negligence claims for which Mesa at all relevant times owed Secrets a duty to defend and indemnify.

## This Court's Final Judgment that Mesa Is Required to Defend and Indemnify Secrets on the Snyders' Already Adjudicated Common-Law Negligence Claims

73.     As this Honorable Court has already ruled in its July 21, 2017 Memorandum Opinion in N.D. Ohio Case No. 1:16-CV-2035, "The State Court is a Court of competent jurisdiction and Secrets' liability for common-law negligence was actually and directly litigated in the State Court," and "Mesa was in privity with Secrets and could have sought a declaration as to its rights and obligations or otherwise intervened in the State Court Action, but failed to do so despite having ample opportunity." (Exhibit A, at PageID #1632).

74.     Instead, Mesa waited until August 15, 2016, nearly two weeks after the State Court held its evidentiary hearing and bench trial to fully adjudicate Secret's liability on the

Snyders' common-law negligence claims, and then it filed a Complaint for Declaratory Judgment in this Honorable Court as *Mesa Underwriters Specialty Insurance Company v. Secret's Gentleman's Club, et al.,* N.D. Ohio Case No. 1:16-cv-2035.

75.     Both Secrets and the Snyders filed counterclaims for Declaratory Judgment regarding Mesa's improper denial of a defense and coverage on the common-law negligence claims at issue in the State Court Action (which by then had already been reduced to final judgment by the State Court), as well as additional counterclaims for breach of contract, bad faith and breach of fiduciary duty.

76.     Mesa filed a Motion for Judgment on the Pleadings in N.D. Ohio Case No. 1:16-CV-2035, and the Snyders and Secrets both filed Motions for Partial Summary Judgment seeking declarations from this Honorable Court that Mesa had a contractual duty to both defend and indemnify Secrets on the Snyders' common-law negligence claims, which by then had already been adjudicated to final judgment in the Snyders' favor in State Court.

77.     On July 21, 2017, after Mesa filed multiple and extensive briefs on the insurance coverage issues relating to its duty to defend and indemnify on the Snyders' claims and final judgment against Secrets, this Honorable Court denied Mesa's Motion for Judgment on the Pleadings, granted the Motions for Summary Judgment filed by the Snyders and Secrets, and entered final judgment in favor of the Snyders and Secrets and against Mesa on the coverage issues by way of its Memorandum Opinion and Judgment Entry, attached as Exhibit A.

78.     In the final judgment, this Honorable Court held that Mesa was collaterally estopped from relitigating the issue of Secrets' liability on the Snyders' common-law negligence claims in the District Court:

> Collateral estoppel applies to an insurer who denies coverage and a defense to its insureds and chooses not to intervene or otherwise protect its interests or those of

16

its insureds….While Mesa may disagree with the State Court's determination that Secrets is liable for common law negligence—separate, distinct and independent from anything having to do with the sale or service of alcohol—the doctrine of collateral estoppel precludes Mesa from attempting to relitigate Secrets' liability in this Court. Further, there is nothing to suggest that the State Court failed to consider all available evidence or thoroughly evaluate the claims before it and, had Mesa wished to challenge the evidence or opine as to the applicability of a particular case to the facts and circumstances of this case, the appropriate place to do so was in the State Court Action. (See 7/21/17 Memorandum Opinion, Doc. #55, PageID #1632-1633, attached as Exhibit A).

79. This Honorable Court then turned its attention to Mesa's policy language at issue and, applying the State Court's Findings of Fact and Conclusions of Law to that policy language, held that Mesa is required to defend and indemnify Secrets on the Snyders' common-law negligence claims which have already been adjudicated to final judgment in the State Court, as follows:

- [E]ven if its initial review of the Complaint left Mesa with the impression it had no duty to defend, Mesa's duty arose shortly thereafter, when further proceedings and communication from Counsel made it clear that Secrets' actions – separate and apart from the sale or furnishing of alcohol to Mr. Vargas, or Mr. Vargas's consumption of alcohol at Secrets – could arguably constitute common law negligence. Accordingly, Mesa had a duty to defend Secrets in the Underlying State Court Action. (Memorandum Opinion, Exhibit A, at PageID #1636).

- As determined by the State Court, Secrets is liable for Ms. Snyder's death based on its negligent acts that are separate, distinct, independent from and unrelated to the sale and service of alcohol and/or statutory Dram Shop provisions. Accordingly, pursuant to the express language of the Policy, Mesa is required to indemnify Secrets on the Snyders' common-law negligence claims which have been adjudicated to final judgment in the State Court. (Id. at PageID #1633-1634).

- The Motions for Partial Summary Judgment filed by Defendants, GLMR, Inc. and Secrets Gentleman's Club (Docket #31) and Defendants Sharon and Terry Snyder (Docket #32) are hereby GRANTED to the extent both seek a determination as to Mesa's duty to defend and indemnify. (Judgment, Exhibit A, at PageID #1638).

17

80.     In the July 21, 2017 Memorandum Opinion and Judgment Entry (Exhibit A), this Honorable Court, based on its determination that Mesa has a duty to defend and indemnify on the Snyders' common-law negligence claims against Secrets, *sua sponte* dismissed without prejudice all remaining claims and counterclaims at issue in N.D. Ohio Case No. 1:16-CV-2035 to try to conserve the resources of all parties, with the caveat that all such claims may be refiled by October 1, 2017.

81.     Plaintiffs' breach of contract, bad faith, and breach of fiduciary duty claims asserted in this current Complaint are timely filed before the October 1, 2017 deadline established by this Honorable Court in its July 21, 2017 Memorandum Opinion and Judgment. These claims are independent from the coverage issues that have already been fully adjudicated and are ripe for adjudication by this Court.

82.     For purposes of these claims, and pursuant to the agreements attached as Exhibit O, the Snyders are Secrets' partial assignee, and both the Snyders and Secrets have standing and retain the right to pursue the claims alleged in this Complaint to recover damages against Defendant Mesa, including the damages alleged herein, as well as those to be developed in discovery and proven at the time of trial.

## COUNT ONE
### (Breach of Contract)

83.     Plaintiffs incorporate by reference all of the allegations contained in Paragraphs 1 through 82 of this Complaint as if fully rewritten herein, as well as the allegations set forth in the additional count(s) below.

84.     At all relevant times, including on April 5, 2014 when Desiree Snyder sustained injuries and died due to the common-law negligence of Secrets, Secrets was insured under Mesa's Commercial General Liability policy number MP0034001000890 for these claims, which this Honorable Court has already determined. (See Memorandum Opinion, Exhibit A, at PageID #1612-163; See also Mesa policy number MP0034001000890, Exhibit D).

85.     At all relevant times, Secrets fulfilled all duties and conditions required under the contract, Mesa's policy number MP0034001000890, including but not limited to their payment of all premiums due for the defense and insurance coverage obligations Mesa owed under this policy.

86.     To the extent Secrets failed to comply with any condition(s) for a defense and coverage under Mesa's policy number MP0034001000890, which is now irrelevant since this Honorable Court has already issued a final judgment that Mesa was required to defend and indemnify Secrets on the Snyders' fully adjudicated common-law negligence claims, any such failure on the part of Secrets is excused due to Mesa's breach of conduct and/or tortious conduct.

87.     Secrets timely put Mesa on notice of the Snyders' State Court Action against them, including the Snyders' separate common-law negligence claims asserted therein, and demanded a defense and indemnity under Mesa's policy number MP0034001000890.

88.     The Snyders' common-law negligence claims against Secrets unrelated to the sale or service of alcohol have already been fully adjudicated to a final judgment by the State Court, as shown in Exhibit B, and constitute claims against Secrets for "bodily injury" caused by an "occurrence" in the "coverage territory" during Mesa's policy period that are expressly covered under Mesa's policy number MP0034001000890.

89.     In N.D. Ohio Case No. 1:16-CV-2035, this Honorable Court has already ruled that claims of ordinary negligence such as this are covered as "occurrences" under this policy. (Memorandum Opinion, Exhibit A, at PageID # 1613).

90.     It is undisputed that Mesa repeatedly denied a defense and coverage to Secrets under Mesa's policy number MP0034001000890 on the Snyders' common-law negligence claims asserted in the State Court Action.

91.     By way of its own final judgment, attached as Exhibit A, this Honorable Court has held that Secrets was insured under Mesa's policy number MP0034001000890, that Mesa had a duty to defend Secrets in the Underlying State Court Action and that, pursuant to the express language of Mesa's policy no. MP0034001000890, Mesa is required to indemnify Secrets on the Snyders' common-law negligence claims which have already been adjudicated to final judgment in the State Court. (Memorandum Opinion, Exhibit A, at PageID #1631-1637).

92.     Since Mesa's contractual duties owed to Secrets and the breach thereof have already been adjudicated and established as a matter of law, the sole issue that remains for adjudication by this Honorable Court on Plaintiffs' breach of contract claim is the measure of damages to be awarded due to Mesa's breach of contract.

93.     As a direct and proximate result of Mesa's willful breach of the insurance contract, Secrets, as well as the Snyders as their partial assignee, have suffered damages, including damages from being wrongfully denied the defense and insurance coverage owed under Mesa's policy number MP0034001000890, as well as other damages recoverable under Ohio law due to Mesa's breach of contract which will be proven at the time of trial.

94.     Mesa's breach of its contractual duties to defend and indemnify Secrets on the Snyders' common-law negligence allegations and counts asserted against Secrets in the State

Court Action constitutes a material breach of the contract by Mesa and proximately caused Secrets to incur various damages, including but not limited to substantial litigation costs and attorney fees for having to hire their own counsel to defend and represent them in the State Court Action, in N.D. Ohio Case No. 1:16-CV-2035 and in the current lawsuit, and other damages for Mesa's breach of contract which will be proven at the time of trial.

95.     Mesa's breach of its contractual duties to defend and indemnify Secrets on the Snyders' common-law negligence allegations and counts asserted against Secrets in the State Court Action constituted a material breach of the contract by Mesa and resulted in Secrets having an excess final judgment rendered against them and in favor of the Snyders by the State Court in the amount of $8,038,305.66, which Defendant Mesa should be required to satisfy.

96.     Mesa's breach of its own contract in refusing to defend and indemnify Secrets on the Snyders' common-law negligence allegations and counts asserted in the State Court Action relieved Secrets from having to comply with conditions set forth in Mesa's policy number MP0034001000890, including any conditions limiting the amount of insurance coverage for a final judgment.

97.     The State Court's September 28, 2016 Findings of Fact and Conclusions of Law and final judgment rendered against Secrets on the Snyders' common-law negligence claims constitutes a final judgment that Secrets is legally obligated to pay because of bodily injury to which the insurance afforded under Mesa's policy number MP0034001000890 applies.

98.     Mesa's ongoing refusal to indemnify Secrets for the final judgment the State Court rendered against Secrets after fully adjudicating their liability on the Snyders' common-law negligence claims constitutes an ongoing breach of contract on the part of Mesa, who is

contractually required to pay on behalf of Secrets all amounts they are legally required to pay as damages because of the bodily injury sustained by Decedent Desiree Snyder.

99.     As a direct and proximate result of Mesa's breach of the insurance contract, which has already been determined as a matter of law, one or more of the Plaintiffs, individually, collectively and/or as partial assignees, have been denied the policy benefits due under the contract and have suffered various damages, including by incurring substantial legal fees, expenses and costs in an amount to be proven at the time of trial, having an excess judgment rendered against Secrets by the State Court Action in the amount of $8,038,305.66 for which Mesa is required to indemnify, and other damages arising from Mesa's breach of contract to be proven at the time of trial, including but not limited to the periodic payments Secrets continues to pay the Snyders towards the final judgment.

## COUNT TWO
### (Breach of Fiduciary Duties/Bad Faith)

100.     Plaintiffs incorporate by reference all of the allegations contained in Paragraphs 1 through 99 of this Complaint as if fully rewritten herein.

101.     Because Secrets was covered as a Named Insured and/or Insured under Mesa's policy number MP0034001000890, Mesa owed Secrets a fiduciary responsibility of utmost good faith and fair dealing. *Buemi v. Mutual of Omaha Ins. Co.* (8th Dist. 1987), 37 Ohio App. 3d 113, 116, 524 N.E. 2d 183, 186; *Jokic v. State Auto. Mut. Ins. Co.*, 11th Dist. No. 2004-L-135, 2005-Ohio-7044, 2005 WL 3610428, ¶34.

102.     At all relevant times, Mesa had a duty to act in good faith in the handling and payment of the claims asserted by the Snyders against Secrets. This included Mesa's duty to act in good faith in the defense of Secrets on the Snyders' common-law negligence claims, as well

as the duty to act in good faith in the handling, payment and/or settlement of the Snyders' common-law negligence claims against Secrets for the survival and wrongful death damages sustained by 22-year-old Decedent Desiree Snyder and her Estate.

103.    At all relevant times, Mesa knew or reasonably should have known that both the verdict and settlement value of the survival and wrongful death claims asserted by the Snyders against its insureds exceeded their liability coverage limits afforded under its policy number MP0034001000890, and that its failure to act in good faith in defending and/or indemnifying Secrets on these claims and/or its failure to act in good faith in resolving these claims within policy limits would unreasonably expose Secrets to the likelihood of an excess judgment being rendered against them.

104.    At all relevant times, including up until the time the excess final judgment was fully adjudicated in and rendered by the State Court, the Snyders' counsel did attempt and/or was willing to negotiate in good faith to resolve the common-law negligence claims within Mesa's policy limits, yet Mesa, in addition to wrongfully denying a defense and indemnity to its own insureds, refused to engage in any discussions or negotiations to attempt to resolve these multi-million-dollar claims the Snyders had asserted against its insureds.

105.    Under controlling Ohio law, the scope of the allegations contained within the complaint determine the extent of an insurer's duty to defend, and this absolute duty arises when the allegations state a claim that potentially or arguably falls within the liability insurance coverage.  *Mid-Continent Ins. Co. v. Coder*, 563 Fed. Appx. 422, 425 2014 U.S. App. LEXIS 740 (6th Cir. April 21, 2014); *Ohio Gov't Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948; *City of Sharonville v. Am. Empirs. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180.

106.    Based on the common-law negligence allegations and claims set forth in the Snyders' State Court Action, Mesa was required to defend Secrets regardless of its own subjective beliefs as to the veracity of the common-law negligence claims asserted against Secrets in the State Court Action

107.    In handling the Snyders' claims asserted against its insureds in the underlying State Court Action, Mesa, through its agents, adjusters, claims examiners, investigators and/or other employees, acted unreasonably, without reasonable justification, fraudulently, intentionally, recklessly, not in good faith, willfully, wantonly and/or with actual malice in numerous respects, including but not limited to for the following reasons:

- Willfully refusing and failing to adequately investigate the common-law negligence allegations and counts asserted against its insureds (Secrets) in the Snyders' State Court Action;

- Denying a defense and indemnification to its insureds within 24-hours of first becoming aware of the Snyders' State Court Action and common-law negligence allegations and counts asserted therein, and without first conducting a reasonable investigation;

- Intentionally misrepresenting to its insureds that all of the different claims (plural) set forth in the Snyders' State Court Action was only a single claim when it knew that to be false;

- Failing to base its duty to defend on the scope of the common-law negligence allegations and counts contained in the Snyders' State Court Action as required by well-settled Ohio law, and instead choosing to improperly deny a defense and coverage to its insureds based on its self-serving credibility determination that

"[w]e have no reason to ascribe any veracity to Plaintiffs' allegations against the Defendants";

- Rejecting repeated demands to defend and indemnify Secrets after being fully and repeatedly informed that the Snyders' State Court Action contains common-law negligence claims that are separate, distinct, independent from and unrelated to the sale or service of alcohol;

- Continuing to deny a defense and indemnity to Secrets after being informed and reminded in writing that its self-serving subjective beliefs as to the credibility of the Snyders' common-law negligence allegations is an improper basis for denying a defense and/or coverage since the scope of the allegations contained in the Complaint is what governs under well-settled Ohio law;

- Repeatedly ignoring the economic hardship its wrongful denial of a defense and indemnification was causing and did cause to its insureds;

- Manufacturing false and unsupportable grounds for denying a defense and coverage, including by taking the position that Secrets was not an insured under its policy number MP0034001000890, when it knew that to be untrue and after Secrets had already paid it significant premiums for the defense and coverages Mesa owed to them under this renewal policy;

- Taking the position that Secrets Gentlemans Club, which is expressly listed as a Named Insured under its policy, is not entitled to a defense or coverage on the purported basis that it is not an Ohio corporation;

- Taking a coverage position that would result in no one qualifying as a Named Insured or an Insured under its policy, thus resulting in illusory coverage;

- Collecting significant premiums for issuing policy number MP0034001000890 with the intent of not providing a defense or coverage to anyone under that policy;

- Failing to reconsider its position denying a defense and coverage to Secrets on the Snyders' common-law negligence claims after being provided with expert reports in the State Court Action showing that these claims were separate, distinct, independent from and unrelated to the sale or service of alcoholic beverages;

- Ignoring and choosing not to reply to correspondence and coverage demands from the attorney Secrets had to retain at their own significant expense after Mesa wrongfully denied them a defense and indemnification under its policy;

- Failing to reconsider its denial of a defense and coverage for Secrets on the Snyders' common-law negligence claims after the State Court denied a Motion for Summary Judgment that Mesa's retained counsel had filed on behalf of co-defendant Gigi's Lounge on those same claims, and when Mesa therefore knew that the Snyders' common-law negligence claims would be decided by the finder of fact;

- Failing to act in good faith in the handing of the Snyder' common-law negligence claims asserted against its insureds;

- Refusing to follow Ohio law that required Mesa to defend and indemnify Secrets, including the Sixth Circuit's decision in *Mid-Continent Inc. Co. v. Coder*, 563 Fed. Appx. 422, 2014 U.S. App. LEXIS 70460 (6th Cir., April 21, 2014), the

Eighth District Court of Appeals' decision in *Kovesdy v. Utica Fire Ins. Co.*, 119 Ohio App.3d 547, 550-551, 695 N.E.2d 1165 (8th Dist. 1997), and decisions by other Ohio Courts which recognize that a liquor liability exclusion does not preclude coverage when, as here, there are acts of negligence independent from and unrelated to the sale or service of alcohol;

- Failing to act in good faith with respect to the payment or settlement of the Snyders' common-law negligence claims asserted against Secrets;

- Failing and refusing to settle the Snyders' common-law negligence claims against Secrets for an amount within the policy limits and, in fact, refusing to enter into any type of settlement discussions whatsoever to try to resolve these claims;

- Other actions and/or omissions demonstrating that Mesa acted unreasonably, without reasonable justification, fraudulently, intentionally, recklessly, not in good faith, willfully, wantonly and/or with actual malice which will be developed during discovery and which will be proven at the time of trial.

108. The aforementioned conduct lacked reasonable justification on the part of Mesa, under circumstances where the predictable results of its actions were considered and known. Mesa knew, or should have known, that Secrets was substantially certain to suffer serious financial harm due to its disreputable claims handling practices, including an excess judgment being adjudicated against them by the State Court. Despite that knowledge, Mesa continued to act to maximize its own profits while simultaneously denying a defense and coverage on claims within the scope of the defense and coverage Secrets had purchased from it and was entitled to receive.

109.     The aforementioned conduct by Mesa was designed to financially punish their insureds (Secrets) and to avoid at all costs the contractual and legal responsibilities to defend and indemnify its insureds in the underlying multi-million-dollar common-law negligence action.

110.     The actions and omissions of Mesa in denying a defense and indemnification to Secrets were arbitrary and capricious, outrageous in nature and/or done without any reasonable justification.

111.     The actions and omissions of Mesa demonstrate malice, aggravated or egregious fraud, oppression, or insults and Mesa, as the principal or master of its agents, adjusters, claims examiners, investigators and/or other employees, authorized, participated in and/or ratified those actions and omissions.

112.     The actions and omissions of Mesa constitute a breach of the fiduciary duties Mesa owed to Secrets, including its requisite duties of good faith and fair dealing.

113.     As a direct and proximate result of Mesa's lack of good faith and/or breach of fiduciary duties, Secrets and their individual owners suffered emotional distress and/or anxiety, humiliation, diminished reputation, inconvenience and/or economic harm, have incurred extensive attorney fees, litigation expenses and/or court costs in the State Court Action, N.D. Ohio Action (Case No. 1:16-CV-2035) and the current lawsuit.

114.     In addition, Secrets has incurred defense costs well in excess of $100,000.00 in defending the State Court Action.

115.     In addition, Secrets had a final judgment rendered against them in the amount of $8,038,305.66 by the State Court after it independently adjudicated their liability on the Snyders' common-law negligence claims for the survival and wrongful death damages sustained by Decedent Desiree Snyder and her Estate, and they have suffered additional economic damages in

the form of the periodic payments they have been making towards that final judgment, among other damages which will be proven at the time of trial.

116.     As a direct and proximate result of Mesa's lack of good faith and/or breach of fiduciary duties, its insureds (Secrets) had a final judgment rendered against them in the amount of $8,038,305.66, which is a public record, which will interfere with their ability to obtain credit now and in the future, and which has and will continue to subject them and their owners to public humiliation and degradation.

117.     As a direct and proximate result of Mesa's unrelenting bad faith and inexcusable violations of the fiduciary obligations which it owed, Secrets and its owners have suffered, and will continue indefinitely to suffer, all the damages and losses described herein and other damages to be established at the time of trial.

118.     Mesa's unjustified denial of a defense and indemnification to Secrets was intended to maximize its own company profits, despite its appreciation that the contractual rights and financial interests of its insureds were substantially certain to be harmed. An award of punitive damages, legal fees, litigation expenses and costs is therefore justified under Ohio law due to Mesa's conscious disregard of the legal rights and financial well-being of Secrets, and also due to other conduct which will be proven at trial and which will support an award of punitive damages against Mesa under Ohio law.

WHEREFORE, the Snyders and Secrets seek judgment against Mesa on the counts set forth in this Complaint, including for the following requested relief:

1.     On Count One of their claims against Mesa, Plaintiffs pray for judgment and seek compensatory damages against Mesa in an amount in excess of $75,000.00 for damages flowing from Mesa's breach of its contractual duties to defend and

29

indemnify Secrets in the State Court Action, including all legal fees, litigation expenses and court costs incurred to enforce their contractual rights in three separate lawsuits now, plus interest, costs and attorney fees as allowed by law, and any other legal, equitable, or declaratory relief this Court deems appropriate.

2.    On Count Two of their claims against Mesa, Plaintiffs pray for judgment and seek compensatory damages in excess of $75,000.00 up to the full amount of the excess State Court final judgment in the amount of $8,038,305.66, punitive damages in excess of $75,000.00 up to the maximum amount permitted by law, reasonable attorney fees and litigation expenses incurred in connection with the three lawsuits described in this Complaint, pre-judgment and post-judgment interest, the costs of this action, and any other legal, equitable, or declaratory relief this Court deems appropriate.

## **JURY DEMAND**

Trial by jury is hereby demanded.

Respectfully submitted,


/s/ W. Craig Bashein
W. Craig Bashein (#0034591)
**BASHEIN & BASHEIN CO., L.P.A.**
Terminal Tower, 35th Floor
50 Public Square
Cleveland, OH  44113
(216) 771-3239
(216) 781-5876 (fax)
cbashein@basheinlaw.com

/s/ Paul W. Flowers
Paul W. Flowers (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**
Terminal Tower, Suite 1910
50 Public Square
Cleveland, OH  44113
(216) 344-9393
(216) 344-9395 (fax)
pwf@pwfco.com

/s/ Stephen T. Keefe Jr.
Stephen T. Keefe, Jr.  (#0067361)
**THE KEEFE LAW FIRM, LLC**
14222 Madison Avenue
Lakewood, OH  44107
(216) 375-0155
(216) 228-7207 (fax)
keefe@keefelawfirm.com

*Attorneys for Plaintiffs Sharon and
Terry Snyder*

/s/ Michelle J. Sheehan
Michelle J. Sheehan (0062548)
**REMINGER CO., LPA**
101 West Prospect Avenue
Suite 1400
Cleveland, OH  44115
(216) 687-1311; Fax: (216) 687-1841
msheehan@reminger.com

*Attorney for Plaintiff GLMR, Inc. and
Secret's Gentleman's Club*

31